IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ELIZABETH C. BARRETT, et al.,       :
                                    :          CIVIL ACTION
        v.                          :
                                    :          NO. 03-4978
WEST CHESTER UNIVERSITY             :
OF PENNSYLVANIA OF THE              :
STATE SYSTEM OF HIGHER              :
EDUCATION, et al.                   :

SURRICK, J.                                         APRIL 24, 2009

## <u>MEMORANDUM</u>

Presently before the Court is Plaintiffs' Motion for a Reconsideration and Amendment of Award of Attorney's Fees.  (Doc. No. 45.)  For the following reasons, Plaintiffs' Motion will be denied.

## I.    BACKGROUND

### A.    Underlying Litigation[1]

On April 28, 2003, West Chester University ("WCU") announced its decision to eliminate its women's gymnastics and men's lacrosse programs.  At the same time, WCU stated that it intended to add women's golf to its athletic program.

A concerned parent of one of the eight members of the women's gymnastics team contacted Trial Lawyers for Public Justice ("TLPJ"), a public interest law firm based in Washington, D.C., which ultimately took on the case.  TLPJ contacted Hangley Aronchick Segal

---

[1] The facts related to the underlying litigation are addressed more thoroughly in our Memorandum and Order dated November 12, 2003 (Doc. No. 18), as well as our Memorandum and Order dated March 31, 2006 (Doc. No. 44).

& Pudlin ("Hangley firm") and engaged the firm as co-counsel in the matter.  TLPJ has been involved in Title IX litigation since 1985 when Arthur Bryant, the Executive Director of TLPJ, served as lead counsel in *Haffer v. Temple University*, 688 F.2d 14 (3d Cir. 1982).  (Doc. No. 32, Ex. 2 (hereinafter, "Bryant Decl.").)  William Hangley, a founder and shareholder of the Hangley firm, is an experienced litigator with experience in Title IX litigation, having participated in the *Haffer* case.  (Doc. No. 32, Ex. 4 (hereinafter, "Hangley Decl.").)

As a public interest law firm, TLPJ does not charge its clients for services rendered but does seek attorney's fees pursuant to fee-shifting statutes.  (Bryant Decl.)  The Hangley firm, which does charge clients for its services, agreed to work on this case because of the "important social value in enforcing Title IX."  (Hangley Decl.)  The firm "viewed the risk of loss and the certainty that any payment would be delayed as a pro bono contribution on the firm's part."  (*Id*.)

Plaintiffs' attempts to have the gymnastics team reinstated without court involvement failed, and on September 4, 2003, Plaintiffs filed a lawsuit along with a motion for a preliminary injunction.  Plaintiffs claimed that Defendants' elimination of the women's gymnastics team violated Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681, *et seq.*

After the parties fully briefed the issues and following a hearing that spanned four days, we granted Plaintiffs' request for a preliminary injunction and ordered Defendants to immediately reinstate the women's gymnastics team.  *See generally Barrett v. W. Chester Univ. of Pa.*, No. 03-4978, 2003 U.S. Dist. LEXIS 21095 (E.D. Pa. Nov. 12, 2003) (hereinafter, "Doc. No. 18").  Following our decision, the parties agreed to a settlement, which provided that the preliminary injunction would become permanent and that all claims that were not related to the discontinuance of the gymnastics team would be dismissed without prejudice.  (Doc. No. 29.)

The parties entered into an additional, separate agreement wherein Plaintiffs agreed not to seek a portion of the fees for work that their attorneys performed from January 1, 2004, through completion of the settlement negotiations.  (Hangley Decl. ¶ 32; Doc. No. 32, Ex. 5, ¶ 50 (hereinafter, "McKee Decl.").)  Plaintiffs also agreed to forego a portion of the costs that they incurred in preparing their fee petition.  (*Id*.)

### B.      Fee Petition

On June 21, 2004, Plaintiffs requested attorney's fees from WCU in the amount of $207,609.50 plus costs in the amount of $12,477.82, for a total of $220,087.32, pursuant to 42 U.S.C. § 1988, 28 U.S.C. §§ 1821, 1920, and Federal Rule of Civil Procedure 54.  (*See* Doc. No. 32.)

Defendants objected to these totals, contending that the number of hours spent on the litigation and the hourly rate of some of Plaintiffs' attorneys were unreasonable.  Defendants contended that the costs should be reduced and suggested that a reasonable figure for attorney's fees would be $81,858.10.  (Doc. No. 35 at 55-58.)

### C.      Memorandum and Order of March 31, 2006

In a Memorandum and Order dated March 31, 2006, we granted in part and denied in part Plaintiffs' motion for attorney's fees and costs.  *See Barrett v. W. Chester Univ.*, No. 03-4978, 2006 U.S. Dist. LEXIS 15332 (E.D. Pa. Mar. 31, 2006) (hereinafter, "Doc. No. 44").)  We stated that:

> [o]ur task is to carefully review the fee request and determine whether the evidence presented supports the request.  In so doing, we will consider the public nature and financial circumstances of Defendants.  *Alizadeh v. Safeway Stores*, 910 F.2d 234, 238 (5th Cir. 1990) (while the non-prevailing party's financial condition is not appropriate to consider in determining *whether* to award attorney's fees, it is

> appropriate to consider when determining the *amount* of the attorney's fees).  In a
> case like this, where the award of attorney's fees will affect the public treasury and
> will have a direct impact on the students at the university, our review must be
> particularly careful.  *See Keyes v. Sch. Dist. No. 1, Denver, Colo.,* 439 F. Supp. 393,
> 415 (D. Colo. 1977) (in school desegregation case, court considers the fact that "the
> very entity mandated to restructure its school system . . . will have to further expend
> public funds for attorneys who brought the restructuring to fruition").

(Doc. No. 44 at 4-5 (emphasis in original).)  After establishing a lodestar – the product of the

reasonable number of hours worked and the rate per hour – we considered whether that figure

was reasonable or whether a downward adjustment was appropriate.  (*Id*. at 33.)  As we did when

granting the preliminary injunction, we noted that WCU is a public university that is supported

by the taxpayers of Pennsylvania and federal funds.  (*Id*.)  Moreover, we noted that an award of

attorneys' fees would negatively impact the students of WCU, including the Plaintiffs for whose

benefit the preliminary injunction was imposed.  (*Id*. at 34.)  With these factors in mind and

considering the fact that counsel had accepted representation of Plaintiffs as a public service, we

stated:  "[W]e are satisfied that a reduction of the lodestar calculation by a figure of fifteen

percent (15%) is fair, reasonable, and appropriate."  (*Id*. at 35.)  Counsel fees and costs in the

total amount of $148,472.59 were awarded.

On April 14, 2006, Plaintiffs filed the instant Motion for Reconsideration, arguing that

"the Court erred when it reduced the lodestar by 15 percent."  (Doc. No. 45.)

## II.    LEGAL STANDARD

"The purpose of a motion for reconsideration is to correct manifest errors of law or fact or

to present newly discovered evidence."  *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir.

1985).  A motion for reconsideration should be granted only upon (1) the availability of new

evidence; (2) an intervening change in the law; or (3) the need to correct a clear error of law or

prevent a manifest injustice.  *See Marriott Senior Living Quarters, Inc., v. Springfield Twp.*, No. 97-3660, 2000 U.S. Dist. LEXIS 17529, at *4 (E.D. Pa. Nov. 20, 2000).  "Dissatisfaction with the Court's ruling is not a proper basis for reconsideration."  *Id*. (*citing Burger King Corp. v. New England Hood & Duct Cleaning Co.*, No. 98-3610, 2000 U.S. Dist. LEXIS 1022, at *2 (E.D. Pa. Feb. 4, 2000)); *see also Glenolden Energy Co. v. Borough of Glenolden*, 836 F. Supp. 1109, 1122 (E.D. Pa. 1993) (finding that a motion for reconsideration is not properly grounded on request to rethink a decision the court has already made).   A motion for reconsideration may not be used as a vehicle to assert new arguments that could have been but were not previously presented to the court.  *See Assisted Living Group, Inc., v. Upper Dublin Twp.*, No. 97-3427, 1997 U.S. Dist. LEXIS 19554, at *4-5 (E.D. Pa. Dec. 8, 1997).  Due to the strong interest in the finality of judgments, courts should grant motions for reconsideration sparingly.  *See Slagan v. John Whitman & Assoc., Inc.*, No. 97-3961, 1997 U.S. Dist. LEXIS 14910, at *1 (E.D. Pa. Sept. 26, 1997).  In considering the instant motion for reconsideration, we must determine whether (1) a clear error of law or manifest injustice was committed; (2) there has been an intervening change in controlling law; or (3) new evidence has become available.

## III.   DISCUSSION

Plaintiffs argue in their motion for reconsideration that, in order to prevent manifest injustice, there is a need to correct clear errors of law and fact in our March 31, 2006 Memorandum and Order.  Plaintiffs contend that (1) the Court is bound by Third Circuit precedent that holds "that a non-prevailing defendant's financial circumstances may not be weighed when determining attorney's fees under Section 1988, nor may fees be reduced because the attorneys have taken a lawsuit on as a matter of public interest," (2) the Court's decision

5

"represents a clear error of law because Defendants did not raise these objections to Plaintiffs'

fee application, and the Court may not *sua sponte* reduce fees on grounds Defendants did not

raise," and (3) "the reduction would be manifestly unjust, since it would burden Plaintiffs with

Defendants' own decision to risk taxpayer dollars when they refused Plaintiffs' repeated pleas to

restore the gymnastics team and avoid litigation."  (Doc. No. 45 at 2.)

We disagree.  We are satisfied that our decision to reduce the lodestar amount by fifteen

percent was reasonable and justified.  The Third Circuit has instructed district courts to adopt "a

positive and affirmative function in the fee fixing process." *Maldonado v. Houstoun*, 256 F.3d

181, 184 (3d Cir. 2001), *cert. denied,* 526 U.S. 1130 (1999).  Supreme Court case law instructs

district courts to analyze the reasonableness of attorneys' fees in light of the following twelve

factors:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the
> skill required to perform the legal service properly; (4) the preclusion of employment
> by the attorney due to the acceptance of the case; (5) the customary fee; (6) whether
> the fee is fixed or contingent; (7) time limitations imposed by the client or the
> circumstances; (8) the amount involved and the results obtained; (9) the experience,
> reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the
> nature and length of the professional relationship with the client; and (12) awards in
> similar cases.

*Hensley v. Eckerhart*, 461 U.S. 424, 430 n.3 (1983).

We assess the reasonableness of attorney's fees by applying the "lodestar" formula, which

multiplies "the number of hours reasonably expended by a reasonable hourly rate." *Maldonado*,

256 F.3d at 184.  Having calculated the lodestar, "the resulting product is presumed to be the

reasonable fee to which counsel is entitled." *Id.* (*quoting Pennsylvania v. Del. Valley Citizens'*

*Council for Clean Air*, 478 U.S. 546, 564 (1986)).  Nevertheless, "the district court has the

6

discretion to make certain adjustments to the lodestar." *Rode v. Dellarciprete,* 892 F.2d 1177, 1183 (3d Cir. 1990); *see also Hughes v. Repko*, 578 F.2d 483, 488 (3d Cir. 1978) (stating that after a district court calculates the lodestar, "the court must decide whether the lodestar itself, or some greater or lesser sum, is a reasonable fee").

As described in our Memorandum of March 31, 2006, we took the *Hensley* factors into consideration in reaching the lodestar figure. Even after reducing the number of hours and rate per hour requested by Plaintiffs' counsel, however, we found that the resulting figure did not fairly reflect the fact that the taxpayers of Pennsylvania, as well as WCU students, would ultimately be responsible for the large attorneys' fee award. We were concerned that WCU was a public university which was facing major budgetary concerns. In fact, budgetary concerns were a major factor in the decision to eliminate the gymnastics team in the first instance. We recognized that during early 2003, WCU faced significant financial problems, as did many other public universities. When WCU foresaw a five percent reduction in its state funding, the Office of Student Affairs, with the Athletic Department being its largest sub-division, was faced with the challenge of cutting $260,000.00 from its budget. The Athletic Department was asked to absorb between $95,000.00 and $98,000.00 of those cuts. Such financial circumstances meant that the individuals that would be most affected by WCU's payment of a large attorneys' fee would be the WCU students. It seems obvious that the financial circumstances at WCU would be no better now.

In *Choike v. Slippery Rock University of Pennsylvania*, No. 06-622, 2007 U.S. Dist. LEXIS 78148 (W.D. Pa. Oct. 22, 2007), the district court considered a Title IX case involving a public university and decided that reducing the lodestar was not appropriate. *Id*. at *53-55. The

court considered our March 31, 2006 decision, but factually distinguished the two cases. *Id*. The court found that "a closer review of the evidence reveals that the 'financial plight' was not the real cause of SRU's noncompliance with Title IX." *Id*. at *54. Interestingly, the court stated: "Had noncompliance with Title IX been limited to this period of time, I likely would have reduced the lodestar as did the Barrett court." *Id*.

The fact that we granted the preliminary injunction reflects our conclusion that economic distress does not justify federal civil rights violations. Moreover, we did not find that WCU's financial crisis was a "special circumstance" that wholly excused it from paying attorneys' fees. Nevertheless, we felt and continue to feel that it is a relevant factor to consider when determining the reasonableness of the attorneys' fees under the particular circumstances of this case. *See Roth v. Green*, 466 F.3d 1179, 1194 (10th Cir. 2006) ("'[A]ll the courts of appeals which have addressed the issue have concluded that a nonprevailing [party's] ability to pay is not a proper factor to consider in determining *whether* to award attorneys' fees against [the non-prevailing party], but may be considered when determining *the amount* of the attorneys' fees to be awarded against that party.'" (*quoting Wolfe v. Perry*, 412 F.3d 707, 723-24 (6th Cir. 2005))) (emphasis in original), *cert. denied*, 128 S. Ct. 69 (2007); *Alizadeh v. Safeway Stores*, 910 F.2d 234, 238 (5th Cir. 1998) (holding that while the non-prevailing party's financial condition is not appropriate to consider in determining *whether* to award attorney's fees, it is appropriate to consider when determining the *amount* of the attorney's fees); *Moosa v. Dolan Foster Enters*., No. 95-03099, 1998 U.S. Dist. LEXIS 8609, at *28 (N.D. Cal. Jan. 13, 1998) ("The court may not consider [the non-prevailing party's] ability to pay in deciding whether to award attorneys' fees, but it may be a valid factor in determining the amount of fees to be awarded."); *Moore v. County of Muskegon*,

No. 93-236, 1993 U.S. Dist. LEXIS 18879, at *7 (W.D. Mich. Dec. 14, 1993) ("'Because fees are at bottom an equitable matter, . . . the courts should not hesitate to take the relative wealth of the parties into account.'" (*quoting Rogers v. Kroger Co.*, 586 F. Supp. 597, 601 (S.D. Tex. 1984))).

In addition, courts "have a special responsibility to ensure that taxpayers are required to reimburse prevailing parties for only those fees and expenses actually needed to achieve the favorable result." *Role Models Am., Inc., v. Brownlee*, 353 F.3d 962, 975 (D.C. Cir. 2004); *see also Foley v. City of Lowell*, 948 F.2d 10, 19 (1st Cir. 1991) ("At least where public funds are involved or the public interest is otherwise implicated, the court has a duty to consider the application [for attorneys' fees] critically to ensure overall fairness – a duty that abides even when a fee target is slipshod in its opposition to a fee application."); *Northcross v. Bd. of Educ.*, 611 F.2d 624, 644 (6th Cir. 1979) ("I do not believe it is wrong for us to be conservative in the allowance of attorney's fees to be paid from public funds."), *cert. denied*, 447 U.S. 911 (1980); *Green v. Nevers*, No. 92-76881, 1993 U.S. Dist. LEXIS 7348, at *50-51 (E.D. Mich. Apr. 13, 1993) ("[T]he Court believes that review and approval of attorneys' fees, as an independent part of a settlement proposal, is singularly within the province of the court. . . . The Court believes this is particularly true where one of the settling parties is a public entity and the attorneys' fee award is being financed by public funds."); *Tonti v. Petropoulos*, No. 79-279, 1979 U.S. Dist. LEXIS 15365, at *10-11 (S.D. Ohio 1979) ("It should be noted that a major concern of courts dealing with an award of plaintiff's fees is not present here. This award will not be paid from public funds. In school desegregation cases, therefore, our Court of Appeals has been careful to hold awards to the amount necessary to achieve the purpose of the award and no more. The use

9

of public funds for attorney fees in those cases makes less funds available for the education of the children sought to be benefitted.") (internal citations omitted); *Keyes v. Sch. Dist. No. 1, Denver, Colo.*, 439 F. Supp. 393, 415 (D. Colo. 1977) ("[T]he fact that the public fisc . . . must bear the financial burden [of an award of attorneys' fees] must not be overlooked.  Attorney fee entitlement cannot jeopardize the financial realities of the agency paying the fees.  Certainly the payment of fees awarded herein – and not budgeted – will affect school programming. . . . While this aspect of the case is not pivotal to our overall determination of fees, it certainly cannot be blindly disregarded."); *Oliver v. Kalamazoo Bd. of Educ.*, 73 F.R.D. 30, 48 (W.D. Mich. 1976), *rev'd on other grounds*, 576 F.2d 714 (6th Cir. 1978) ("[T]he court is aware that this fee award will draw upon public funds at a time when financial resources are especially dear.  While this does not diminish petitioners' right to recover just compensation, it is a factor which the court feels may properly be considered in determining what amount is reasonable."); *Baldridge v. Nicholson*, 19 Vet. App. 227, 233 (2005) (finding that when taxpayers are required to pay for attorneys' fees under the Equal Access to Justice Act, courts have a "'special responsibility'" to award only the fees and costs needed to prevail (*quoting Role Models*, 353 F.3d at 975)).

We are fully aware that Plaintiffs' counsel, both at the Hangley Firm and TLPJ, demonstrated admirable lawyering skills during the course of this litigation.  Moreover, there is no doubt that Plaintiffs' lawsuit, preliminary injunction, and settlement vindicated an important social interest.  We also recognize that the award of attorneys' fees in such cases can serve as a deterrent against future violations of civil rights, as well as a tool to convince recalcitrant authorities that federal civil rights violators never prosper.  Furthermore, we recognize that attorneys' fees must be available in order to entice counsel to assist in vindicating such civil

10

rights.

Nevertheless, we continue to believe that the award of almost $150,000.00 in counsel fees and costs provides a reasonable balance between the competing interests here and accomplishes the desired goals.  Plaintiffs' counsel receive significant compensation for a job well done and the students of WCU and the taxpayers of Pennsylvania are not punished for the error that resulted in this litigation.

We reject Plaintiffs' assertions that we committed a clear error of law when we considered Defendants' financial circumstances in determining the proper amount of counsel fees to be awarded.  We also reject the assertion that we created a manifest injustice when we reduced the lodestar figure by fifteen percent.  As we view the matter, it would have created an injustice if we had not.  Accordingly, Plaintiffs' motion for reconsideration will be denied.

An appropriate Order will follow.


BY THE COURT:


/s/ *R. Barclay Surrick*
U.S. District Judge